725 So.2d 1291 (1999)
STATE of Louisiana
v.
Bernell JULUKE, Jr.
No. 98-K-0341.
Supreme Court of Louisiana.
January 8, 1999.
Rehearing Denied February 12, 1999.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Joseph E. Lucore, New Orleans, Counsel for applicant.
Charmagne Ann Padua, James R. Sutterfield, Daniel A. Webb, New Orleans, Counsel for Respondent.
*1292 PER CURIAM:[*]
In this prosecution for the drive-by shooting death of Rondell Santinac, the court of appeal reversed the defendant's conviction for second degree murder upon finding that while the jury may have rationally rejected a common alibi defense asserted by the defendant and his jointly-tried codefendants also involved in the same appeal, Kunta Gable and Leroy Nelson, "[t]he evidence does not exclude every reasonable hypothesis of innocence [as to the defendant] since there was time for the driver of the car to switch places with Juluke, and thus the evidence was insufficient to support Juluke's conviction." State v. Gable, 96-1920, p. 19 (La.App. 4th Cir.1/21/98), 704 So.2d 995. We granted the state's application in the defendant's case because it appeared that the court of appeal substituted its judgment for the jury's as to what the evidence did or did not prove on the basis of a hypothetical set of facts not argued to jurors, inconsistent with the defense that was presented, and implicitly rejected by jurors in reaching their verdicts. We now reverse.
Santinac died in the driveway of 3303 Desire on the night of August 22, 1994, at approximately 9:20 or 9:30 p.m., in a hail of bullets fired by two men wielding AK-47s from the passenger-side windows of a grey Chevrolet Baretta. The men aimed at a vehicle occupied by Santinac and his cousin, Samuel Raeford, who had borrowed the car that afternoon from his girlfriend, Robbie Malone. The state's case against the defendant, as the driver of the grey Baretta, and against Gable and Nelson as the shooters, rested primarily on the eyewitness testimony of Raeford, who survived the attack which claimed his cousin's life after a bullet struck him in the head. Raeford knew all three defendants from the Iberville Project, where his brother lived, and he had seen them together in the project at approximately 6:00 p.m. that night engaged in a dispute with Jacob Carter, a close friend of Robbie Malone's brother. Raeford positively identified Gable and Nelson as the shooters. Raeford had also identified the defendant as the driver of the Baretta in a stationhouse lineup conducted less than two hours after the shooting.
At trial, however, Raeford admitted that he had not obtained a good look at the third man in the car and only assumed that the defendant had been at the wheel because he had seen the group earlier that night in the Iberville Project and the police had stopped all three men in the grey Baretta near the Iberville Project within 15 minutes of the shooting, after the defendant committed a minor traffic violation. The officer responsible for the stop had pulled behind the vehicle on the basis of information about the shooting from the police dispatcher and the stop led to the arrests of all three men. According to the arresting officer, the defendant, also known as Bernell Mays, changed his last name after hearing a follow-up report about the Santinac shooting from the police dispatcher over the patrol unit's radio. A subsequent search of the vehicle failed, however, to find any physical evidence linking any of the defendants to the shooting. The officer wrote the citation at 9:45 p.m., but made the stop "several minutes earlier," perhaps as early as 9:30 or 9:35 p.m. according to several of the defense witnesses on the scene in the project courtyard who saw the flashing lights of the patrol unit as it pulled over the Baretta.
The defendants challenged Raeford's testimony at every turn. On the scene of the shooting, Raeford described the color of the Baretta to investigating officers as blue. By stipulation, the state and defense revealed to jurors that in a pre-trial hearing, Raeford described the car used in the shooting as a turquoise green Baretta, the same make and color of the vehicle described by two defense witnesses who told jurors they had observed the shooting committed by two unidentified men after their attention had been drawn to the passing car, usually parked in the Desire project, by the loud sound pouring out of its stereo system. Raeford told one witness that the green Baretta had been outfitted with custom wheels and a "boom bass" stereo system. Russell Spurlock, the owner of the gray Baretta he had lent the defendant's brother, Izell Henderson, on the day of the *1293 offense, informed jurors that his vehicle was a factory model lacking in custom touches. Other witnesses, including Carter, testified that the three defendants had been locked in a dispute with Carter in the Iberville Project from 8:00 p.m. that night until 9:30 p.m., minutes after the shooting miles away in the Desire Project and within minutes of the stop of Spurlock's Baretta by the police near the Iberville Project. According to Henderson, he had borrowed Spurlock's Baretta to drive his girlfriend, Daphne Cola, home from work at approximately 9:00 p.m. that night. When he returned to the project at 9:30 p.m., he found the argument still underway and suggested that the defendant and his companions cool off by taking the car to find something to eat. To account for the discrepancy in Henderson's testimony and her time card from work which indicated that she had punched out at 9:56 p.m. that night, Cola told jurors she had left work early and had another employee cover for her by clocking out both of their cards. Several witnesses, including Robbie Malone, testified that Raeford had made statements after the offense exonerating all three defendants. Malone told jurors that she had seen Carter with a gun in his hand on that night but did not observe him brandish the weapon at any of the defendants. Malone's niece testified that her uncle was a close friend of Carter and that the two men may have used her aunt's car on one or two occasions.
The state speculated at the close of the case that Santinac may have died in Carter's place in the car belonging to his close friend's sister during a shooting meant to avenge the dispute earlier that evening in the Iberville project. In his closing argument, the defendant's counsel reminded jurors that, unlike the case with Gable and Nelson, Raeford had failed at trial to identify the defendant positively as an occupant of the grey Baretta used in the offense. Counsel left no question, however, that all three defendants had joined in a common alibi defense, which also sought to implicate two unidentified assailants in a turquoise green Baretta with custom wheels and a loud stereo. "We could have rested," counsel reminded jurors, "but we didn't, because there are witnesses who know ... where Bernell Juluke was." Counsel proceeded to discuss the testimony of those witnesses, including Carter, who placed the three defendants together at the time of the shooting and thereby answered his question, "Where was Bernell Juluke at the time that this murder occurred? Bernell Juluke was in the Iberville Projects fussing with Jacob Carter."
The rational factfinder standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), for reviewing the sufficiency of evidence allows an appellate court to impinge on "the actual factfinder's discretion... only to the extent necessary to guarantee the fundamental protection of due process of law." State v. Mussall, 523 So.2d 1305, 1310 (La.1988) (footnote omitted). Given this limited purpose, the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983). The Jackson standard also does not provide a defendant with a means of splitting alternative and inconsistent defenses in different forums, raising one defense before the jury and when that fails, a second defense presupposing a different set of facts in an appellate court conducting sufficiency review under Jackson and La. C.Cr.P. art. 821(E). In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court therefore "does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion." State v. Captville, 448 So.2d 676, 680 (La.1984) (emphasis in original). Instead, the reviewing court must "evaluate[] the evidence in the light most favorable to the prosecution and determine[] whether the alternative hypothesis is sufficiently reasonable that a rational juror could not `have found proof of guilt beyond a reasonable doubt.'" Id. (quoting Jackson, 443 U.S. at 324, 99 S.Ct. at 2792). Finally, the reviewing court must consider all of the evidence introduced at trial, even evidence which the trial court has admitted improperly and which may therefore provide an independent basis for reversing the defendant's conviction *1294 on grounds of trial error. State v. Hearold, 603 So.2d 731, 734 (La.1992) ("[W]hen the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial.").
In this case, despite the common defense of alibi, Raeford's trial testimony positively identifying Gable and Nelson but unexpectedly failing to identify the defendant interjected the possibility that someone else besides the defendant drove the Baretta at the time Gable and Nelson opened fire on the car occupied by Raeford and Santinac, and then exchanged places with the defendant in the 10 or 15 minutes which separated the shooting in the Desire Project from the traffic stop near the Iberville Project. Arguing that possibility to the jury, however, risked eroding a common defense designed to "give strength against a common attack." Glasser v. United States, 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting); see Eaglin v. Welborn, 57 F.3d 496, 501 (7th Cir.) ("The making of inconsistent defenses is likely to confuse the jury and to bring public opprobrium on the criminal justice system for tolerating such monkeyshines."), cert. denied, 516 U.S. 965, 116 S.Ct. 421, 133 L.Ed.2d 338 (1995). Counsel instead urged jurors to consider Raeford's failure to identify the defendant at trial in the context of the much broader exculpatory statements the witness made after the shooting, and after he identified all three defendants, that "these dudes didn't do it, which he told several people." In the context of evidence which indisputably placed the defendant together with Gable and Nelson before the shooting and in their company at the wheel of the grey Baretta within 15 minutes or less afterwards, rational jurors would not find the exculpatory possibility asserted by counsel for the first time on appeal sufficiently reasonable that they could not agree on the defendant's guilt once they chose to believe Raeford and reject the alibi defense, weakened by introduction of Cola's time card and the questions it raised about the time estimates offered by various defense witnesses, because that possibility rested on a factual premise which conflicted with all of the evidence in the case presented not only by the state but also by the defense.
We therefore reinstate the defendant's conviction and sentence for second degree murder and remand this case to the appellate court for consideration of his remaining assignments of error raising issues not previously addressed on the merits in reviewing the convictions of Gable and Nelson.
JUDGMENT VACATED AS TO DEFENDANT JULUKE; CASE REMANDED.
JOHNSON, J., would affirm the decision of the court of appeal. The evidence in this case was not sufficient to support Juluke's conviction.
NOTES
[*] Traylor, J., not on panel. See La.S.Ct. Rule IV, Part II, § 3.