| .GUIDRY, J.
Defendant, Thomas Lester Duvall, was charged by indictment with one count of second degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. Following a jury trial, he was found guilty as charged and was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He moved for post-verdict judgment of acquittal and for a new trial, but the motions were denied. He also moved for reconsideration of sentence, but the motion was denied. The defendant now appeals, designating three assignments of error by counseled brief and an additional nine assignments of error by pro se brief.

FACTS

On August 27, 1996, the victim, Stephen Michael Holt, the defendant and Timothy James Spiece were drinking together outside of the defendant’s apartment at the complex where all three men lived in Morgan City, Louisiana. Holt’s apartment was located next door to defendant’s apartment. While the men were drinking, Holt asked Spiece “how [Spiece] could go offshore and work, you know, so much and [Spiece’s] girlfriend not being home whenever [Spiece] got back from offshore.” The defendant became “upset” with Holt over the comment and told him that he could kick Holt’s ass before he got out of his chair. Holt responded, “Well, if you think you can, go ahead and try[.]” Defendant began hitting Holt until Holt was bleeding and down on one knee, at which point Spiece broke up the fight. Holt *796 went towards his apartment, and defendant went into his own apartment stating, “Oh, it is .357 Magnum time[.]”
Thereafter, Holt exited his apartment with a large stick and moved towards defendant’s apartment. However, he did not attempt to strike defendant with the stick. Defendant exited his apartment with a gun and struck Holt in the face with the weapon, stating, “What are you going to do, shoot me.” Holt turned away from defendant and moved toward his own apartment. Defendant followed Holt into his 13apartment and yelled, “It is none of your business what he does with his life[.]” A shot rang out from the'apartment and “[a] couple of seconds” later, another shot rang out. Defendant contacted police and advised them of his location, that he had “had a fight,” and that he had “just shot somebody.” Subsequently, he also stated, “I know I done wrong.”
Defendant was sitting outside of his apartment when police arrived. Police drew their weapons, pointed them at defendant, and ordered him out of the chair. Defendant refused to comply with the demands initially, and when he did comply, he did so stating, “F— you, I don’t have anything to do — I don’t have to do anything for you Mother F.” However, defendant pointed police in the direction of Holt’s apartment and advised them that the person that was shot was over there. He also stated, “The gun is on the bed in my apartment, in [alpartment 3.” Defendant did not appear to be intoxicated. He spoke clearly. After defendant consented to a search of his apartment, a stainless steel Ruger Security Six Revolver with two spent cartridges was recovered from the foot of the bed in the bedroom.
Holt was discovered laying in his apartment on his left side near a corner with a stick under his leg. He had suffered a single fatal gunshot wound to his left eye from a distance of at least two feet away. Gunpowder residue would have been present on Holt’s hands if they had either been on or near the gun when it was fired. However, no gunpowder residue was discovered on Holt’s hands. Further, police observations of the crime scene and a medical examination of Holt’s body indicated that Holt was standing when he was shot. Additionally, Holt’s apartment did not show evidence that a struggle had taken place.

\ STATEMENT BY SPIECE

In counseled assignment of error number 1, defendant contends the trial court erred in denying his first motion for new trial and motion for mistrial during the testimony of Timothy Spiece.
The first witness to testify for the State at trial was Timothy James Spiece. Spiece testified that after he broke up a fight between defendant and Holt, Holt went towards his apartment and defendant stated, “Oh, it is .357 Magnum time[.]” Defense counsel approached the bench and moved for a mistrial.[1] Counsel argued the State had agreed to furnish the substance of any oral statement allegedly made by defendant, but had failed to disclose the statement testified to by Spiece.[2] The State responded that the statement, which was part of the res gestae of the offense, was made while the offense was ongoing, and was made prior to Holt being shot. The defense relied upon State v. Nogess, 490 So.2d 488 (La.App. 4th Cir.1986). The State offered State v. Smith, 466 So.2d *797 1343 (La.App. 3d Cir.1985).[3] The trial court ruled Spiece’s challenged testimony admissible in the interests of justice. The court found that the State could lawfully rely on Smith for the proposition that it had no burden to inform defendant of its intent to use res gestae. Additionally, the court noted that there was no indication that Spiece had been hidden, incarcerated, or promised immunity, and so, prior to trial, defense counsel could have found out what Spiece was going to say at trial.
If the State intends to introduce a confession or inculpatory statement in evidence, it shall so advise defendant in writing prior to beginning the State’s opening statement unless defendant has been granted pretrial discovery. If it fails to do so, a |Rconfession or inculpatory statement shall not be admissible in evidence. La.C.Cr.P. art. 768. However, notice of an intent to offer an accused’s incul-patory statement is not required under article 768 when the statement sought to be admitted forms part of the res gestae. State v. Walker, 94-0587 at p. 3, 654 So.2d at 453. Even so, under article 716(B) of the Code of Criminal Procedure, a defendant is entitled to discover the existence, although not the contents, of res gestae statements. Walker, 94-0587 at pp. 3-4, 654 So.2d at 453. It is within a trial court’s discretion to disallow the introduction of an oral statement (which was not provided to the defense as required by the discovery statutes) in accordance with the discovery sanctions provided in La.C.Cr.P. art. 729.5. A showing of prejudice by virtue of the trial court’s adverse ruling must be made before a reversal of the conviction would be in order. Walker, 94-0587 at p. 4, 654 So.2d at 453.[4]
La.C.Cr.P. art. 729.5 prescribes sanctions for failure to honor a discovery right, leaving in the trial judge’s discretion the decision of whether to order a mistrial or enter any such other order as may be appropriate. As is pertinent here, La. C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. However, mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610, p. 7 (La.App. 1st Cir.11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
Ijn the instant case, although the State should have informed defendant of the existence of the challenged statement, defendant did not suffer such substantial prejudice that he was deprived of any reasonable expectation of a fair trial. Because Spiece was the first witness to testify, defendant was made aware of the statement early in the trial. Thereafter, through the interrogation of Spiece and subsequent witnesses (and in his closing argument), defendant fully argued his theory questioning the very making of the challenged statement.
Additionally, the trial court’s ruling on the motion for mistrial failed to provide a basis for new trial under La.C.Cr.P. art. 851(2). The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of an abuse of that discretion. State v. *798 Roy, 496 So.2d 583, 594 (La.App. 1st Cir. 1986), writ denied, 501 So.2d 228 (La. 1987). La.C.Cr.P. art. 851(2) requires a showing of prejudicial error. For the reasons set forth hereinabove, the trial court did not abuse its discretion in denying the motion for new trial. Accordingly, this assignment of error is without merit.

PRE-TRIAL STATEMENT OF DEFENDANT

In counseled assignment of error number 2, defendant contends the trial court erred in not allowing him to play the entirety of the statement he made at the time of his arrest.
Detective Gary Pederson was the first witness called by the defense at trial. Defense counsel questioned Pederson concerning a videotaped statement made by defendant following his arrest and following his being advised of his rights. The State objected to the questioning, arguing that the defense was attempting to introduce defendant’s own exculpatory statements into evidence in violation of evidence law. The defense indicated that it wanted the videotape played in its entirety because the statement thereon was an admission, not exculpatory, part of the [7res ges-tae, and showed defendant’s demeanor.[5] After recessing the trial and viewing the videotape, the court held the statement hearsay under, inter alia, State v. Washington, 540 So.2d 502 (La.App. 1st Cir. 1989),[6] and La. C.E. art. 801, but permitted limited introduction thereof, explaining:
[T]he court finds that the statement is not inculpatory, since it has never been disputed by the defendant that he was the shooter. In fact, defense counsel admitted to the Jury in opening statement that it would be the defense’s position, throughout the trial, that Mr. Du-vall did shoot Mr. Holt. So the admission by Mr. Duvall, on the tape, that he did shoot Mr. Holt is not an admission for purposes of this trial, since that fact has already been established. What is on the tape, that the Defendant hopes to get in, is that the shooting was an accident. In that sense, the whole statement has to be viewed as exculpatory rather than' inculpatory, and it is inadmissible.
As to being part of the res gestae, it was taken at the [pjolice [sjtation while the Defendant was in custody, far removed from the crime scene, and is not part of the res gestae.
As to the defense proper, the statement to show attitude and demeanor, while the Court feels that the showing of the statement is not necessary to do that, since we have had testimony on that, nevertheless the tape’s probative value outweighs any prejudicial effect to the State, in that the Jury can then see first-hand, what the attitude and demeanor was at the time of his interrogation. And to that extent, the Court will only permit a few minutes of the tape, up to the time when he was questioned about his constitutional rights and his knowledge thereof, so that the jury can get a flavor of the Defendant’s attitude and demeanor.
After reviewing the videotape in its entirety, we find no error in the trial court’s ruling. In his account of the incident on the videotape, defendant portrays the shooting as an accident. Defendant portrays himself as merely acting in defense of Spiece’s girlfriend’s reputation, while portraying Holt as a belligerent aggressor. In order to qualify under the hearsay ex *799 ception for “things said or done,” pursuant to La. C.E. art. 801(D)(4) (formerly res gestae), statements must be the “events speaking for themselves under the immediate pressure of the occurrence, through the instructive, | Simpulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.” Thus, the challenged statement did not qualify under La. C.E. art. 801(D)(4).[7] Accordingly, this assignment of error is without merit.

SUFFICIENCY

In counseled assignment of error number 3, defendant contends the State failed to present sufficient evidence to sustain his conviction as charged. He argues that a rational trier of fact would have returned a verdict of manslaughter because the offense was committed in sudden passion and heat of blood.
In State v. Juluke, 98-0341, pp. 4-5 (La.1/8/99), 725 So.2d 1291, 1293-94, the Louisiana Supreme Court recently clarified the appellate courts’ duty in conducting sufficiency review under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and La.C.Cr.P. art. 821(E).
In Juluke, the Fourth Circuit reversed Juluke’s second degree murder conviction in a drive-by shooting case concluding, “[t]he evidence does not exclude every reasonable hypothesis of innocence [as to the defendant] since there was time for the driver of the car to switch places with Juluke, and thus the evidence was insufficient to support Juluke’s conviction.” Juluke, 98-0341 at p. 1, 725 So.2d at 1292. Review was granted by the supreme court because “it appeared that the court of appeal substituted its judgment for the jury’s as to what the evidence did or did not prove on the basis of a hypothetical set of facts not argued to jurors, inconsistent with the defense that was presented, and implicitly rejected by jurors in reaching their verdicts.” Juluke, 98-0341 at p. 1, 725 So.2d at 1292. Upon review, the supreme court reversed the Fourth Circuit, noting:
|<)The Jackson standard also does not provide a defendant with a means of splitting alternative and inconsistent defenses in different forums, raising one defense before the jury and when that fails, a second defense [presupposing] a different set of facts in an appellate court conducting sufficiency review under Jackson and La.C.Cr.P. art. 821(E).
Juluke, 98-0341 at pp. 4-5, 725 So.2d at 1293.
In the instant assignment of error, defendant attempts to present a defense both alternative to and inconsistent with the defense he presented in the trial court. To permit him to argue the defense on appeal would violate the above holding of Juluke and allow him the unfair advantage of urging a defense that the State had no reason to challenge.
Defendant’s defense on appeal, that the offense was committed in sudden passion and heat of blood, is founded upon a hypothetical set of facts not argued to the jurors below. At trial, defendant never claimed that he shot Holt in sudden passion or heat of blood. He claimed rather, that he accidentally shot Holt. Defendant’s testimony was as follows:
On the day of the shooting, defendant encountered Holt at 5:00 a.m. after Holt joined him to drink. Defendant, and later Holt, drank vodka. They drank throughout the morning. In the afternoon, Spiece joined them. Holt lit a marijuana cigarette and began passing it around, but *800 defendant refused the cigarette. Holt then “started on [Spiece’s] wife,” asking Spiece “how he could come home and still spend time in his apartment while his wife was running around.” Holt called Spiece’s wife “five or six profanity names.” Spiece did not respond to the insults, and defendant asked him why he did not “say something about that.” Defendant then asked the victim, “What you trying to do, start trouble? We barbecue together, we drink together, and you got to start this?” Holt responded, “I ain’t worried about. I’ll kick his ass.” Then looking at defendant, Holt said, “I’ll kick your old gray haired ass, too.” “Something just flipped” because defendant had a daughter with a year-old son, and defendant told |10Holt, “There ain’t no way you are going to kick this old man’s ass.” Holt and defendant fought with their fists until Spiece broke up the fight. While standing in his doorway, defendant asked Holt “if he wanted some more[,]” and defendant knocked Holt into a chair next to “the apartment” during the ensuing fist fight. Holt then retrieved a “sledge hammer handle” from his apartment. Defendant, who was still standing in his doorway, turned around, looked into his bedroom and saw his .357 pistol. Defendant retrieved the gun with, “intentions of just scaring him[.]” Holt ran back into his apartment, but re-emerged asking defendant if he “was going to shoot him now or later.” Defendant walked over to Holt and threatened to “kick his ass some more if that is what he wanted.” In response to a question from defense counsel, defendant indicated that he went into Holt’s apartment because he was aware that Holt had been arrested for having a weapon.
Inside Holt’s apartment, defendant found Holt opening and looking through drawers. Defendant put his gun on the table/counter and knocked Holt onto the couch. Holt pushed defendant towards the table, and defendant picked up his gun. Defendant pushed Holt, and Holt “grabbed a hold” of defendant. A “round went off,” hitting the ceiling. Defendant pushed Holt, and Holt went down to the floor. Defendant told Holt not to come to defendant’s apartment anymore, and that he (defendant) was going to report the incident to Mrs. Ross (an apartment employee). Defendant turned away from Holt, looked at the door, and with his gun “down[,]” also told Holt, “I am on my way out of here[.]” Holt hit defendant’s hand and arm, and defendant turned and “jerked back,” pulling the trigger. Having been shot, Holt went down.
When asked if he intended to kill Holt, defendant responded, “No. No way in God’s name. I had no intention of killing that man.” When asked if he intended to cause Holt great bodily harm, defendant responded, “No. I just wanted to get things Instraight, and he had that handle. I wasn’t about to get beat with no ax handle or whatever it was.”
Defendant’s defense on appeal is inconsistent with the defense that he presented at trial because a defense that a shooting was committed in sudden passion or heat of blood is inconsistent with a defense that a shooting was accidental. In the former instance, an intent to fire the weapon exists, while in the latter instance, no such intent is present.
Additionally, in reaching its verdict in the instant case, the jury not only implicitly rejected defendant’s defense on appeal, it expressly did so. The jury was charged on the responsive verdict of manslaughter, and manslaughter appeared as an option on the verdict sheet. Nevertheless, the jury rendered a verdict of guilty of second degree murder against defendant.
For the foregoing reasons, the argument that the offense was manslaughter, rather than second degree murder, is not properly before this court and will not be considered.

VIOLATION OF DAUBERT

In pro se assignment of error number 1, the defendant contends the trial court violated Daubert v. Merrell Dow *801 Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as set forth in State v. Foret, 628 So.2d 1116 (La.1993). He argues that the court failed in its “gatekeeper” responsibility by allowing opinion testimony that the victim was standing when he was shot.[8]
A thorough review of the record reveals that the defendant failed to raise a contemporaneous DaubeH objection to the challenged testimony. Accordingly, the alleged error is not properly before this court.[9]

u9bullet hole in ceiling

In pro se assignment of error number 2, defendant contends the trial court denied him the opportunity to present a defense by not permitting Helen Ross to testify concerning the location of the bullet hole in Holt’s ceiling. In pro se assignment of error number 3, defendant contends that the trial court also denied him the opportunity to present a defense by denying his motion to have the jury visit Holt’s apartment to observe the location of the bullet hole in the ceiling.
During a recess well into the State’s case, defense counsel asked that Ms. Helen Ross be permitted to testify because she had advised him that she had cleaned Holt’s apartment after the shooting and was aware that the bullet hole in the ceiling was “a good eight feet off’ from where Holt’s head lay after the shooting. In the alternative, counsel moved that the jury be allowed to visit the crime scene to view the bullet hole in the ceiling. Defense counsel conceded that Ross had been in court throughout the testimony of numerous State witnesses because he had subpoenaed her, but then had released her from the subpoena. The trial court asked defense counsel to explain the relevance of the exact location of the bullet hole in the ceiling, and counsel responded, “I (sic) goes to the relevance of whether or not he was shooting in this close proximity or the shot went off, it was a wild shot in the sky.” The State objected to Ross being permitted to testify on grounds of the sequestration violation and because the fact of a bullet hole in the ceiling had been established and the exact location of the bullet hole in the ceiling was irrelevant. The trial court denied both defense requests, explaining, “Regardless of whether it was right over his body, three feet over or eight feet over, Counsel for Defendant can still argue to the Jury that there was a wild shot and it was an unintentional act.” The defense objected to the trial court’s rulings.
There was no error. Any probative value of Ross’ testimony concerning the exact location of the bullet hole in the victim’s ceiling was substantially outweighed jiaby the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay and waste of time. See La. C.E. art. 403.
Additionally, for the same reasons, the trial court did not abuse its discretion in denying the motion to have the jury view the crime scene. It is well settled that the decision regarding whether to grant or deny a motion to have a jury view the scene of a crime is within the sound discretion of the trial court, and such a ruling will not be disturbed on appeal absent an abuse of that discretion. La. C.Cr.P. art. 762(2). State v. Brown, 594 So.2d 372, 390 (La.App. 1st Cir.1991). Accordingly, these assignments of error are without merit.
“RAP SHEET” OF THE VICTIM
In pro se assignment of error number 3A, defendant contends the trial court erred in sustaining the State’s objection that “rap sheets” were not admissible.
In a pre-trial discovery motion, the defense asked the State to “[p]lease furnish a copy of the arrests and/or convictions of the victim in this prosecution.” The State *802 responded to the request stating, “The State has no duty to comply with this request.” During his questioning of defendant at trial concerning how many times he fired, defense counsel approached the bench and advised the trial court that the State had promised him a copy of Holt’s “rap sheet” and that the sheet was “important” given the questions and events with the gun. The State responded, “Rap sheets are not admissible.” The court sustained the objection and the defense objected to the court’s ruling.
Defendant relies upon State v. Harvey, 358 So.2d 1224, 1232 (La.1978), wherein the court held that a defense request for the prior conviction records of the State’s witnesses constituted a specific and relevant request which the trial court should have honored.
Harvey is inapposite to the instant case. The case was founded upon the principal that the requested evidence was material for its impeachment value (“Brady |14can encompass evidence which is materially favorable to the accused as impeaching evidence.” 358 So.2d at 1232.). See also State v. Henderson, 362 So.2d 1358, 1363 (La.1978), a post -Harvey decision on the issue of whether the State had to furnish the conviction record of a victim where the State intended to introduce an out-of-court statement of the victim at trial (“Because the exited utterance also is in effect a testimonial statement, its introduction likewise should make the declarant susceptible to impeachment and discrediting in the same way as other witnesses, so far as such a process is feasible.”). However, in the instant case, Holt was certainly not going to testify at trial and the‘State offered no out-of-court testimonial statements from Holt into evidence.
Moreover, defendant could not have been prejudiced by the court’s ruling because he testified that he entered Holt’s apartment because he “knew [Holt] got arrested for having a weapon and ... assumed he had one in the house, .... ” Accordingly, this assignment of error is without merit.

JURY CHARGE ON NEGLIGENT HOMICIDE

In pro se assignment of error #3B, defendant contends the trial court erred in refusing to give a negligent homicide instruction.
Defense proposed jury instruction #8 provided:
Negligent Homicide is the killing of a human being by criminal negligence. The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
The trial court denied the defense motion to read the charge to the jury and the defense objected.
It is the duty of the trial judge to give a requested charge which does not require qualification, limitation, or explanation and is not included in the general charge or another special charge, if it is wholly correct and pertinent to the case. La.C.Cr.P. art. 807. This is a corollary of the trial judge’s basic obligation to charge the jury as to the law applicable to the case, under which he is required to cover every 11Bphase of the case supported by the evidence whether or not accepted by him as true. La.C.Cr.P. art. 802. It follows from these rules that the trial judge is required to charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence. State v. Marse, 365 So.2d 1319, 1323 (La.1978).
A charge on negligent homicide was not included in the trial court’s charges to the jury and was warranted due to the presence of evidence from which the jury could have inferred that defendant was guilty of negligent homicide. However, defendant’s proposed charge required explanation, i.e., a definition of “criminal negligence,” and thus, the trial court properly refused the charge.
Moreover, defendant suffered no prejudice from the court’s refusal to *803 charge the jury on negligent homicide. During closing argument, defense counsel told the jury, “What it comes down to is this one simple point. Was it an accident or not. And those are the two things to consider on finding Mr. Duvall guilty or not guilty.... We don’t know what happened inside the apartment. We must give him the benefit of every doubt. And I know that when you do that, you will not return a verdict of [sjecond [d]egree [m]urder. At worse, you will come back and say he is guilty of [m]anslaughter. And if you find it was an accident, you must return a not guilty, straight up.” The omission of a negligent homicide jury charge in a murder case prejudices the defendant only if the jury has insufficient information to understand that if the defendant was guilty only of negligent homicide it should find him not guilty of the charged offense. Marse, 365 So.2d at 1324; see also State v. Gray, 430 So.2d 1251, 1253 (La.App. 1st Cir.1983). Accordingly, this assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

In pro se assignment of error number 4A, defendant contends his trial counsel was ineffective for failing to notify the State of his (defendant’s) |1fiintoxication at the time of the offense. In pro se assignment of error number 4B, defendant claims his counsel was ineffective for failing to interview Timothy Spiece and for failing to determine the location of the bullet hole in Holt’s ceiling. In pro se assignment of error number 4C, defendant claims his counsel was ineffective for failing to obtain a defense expert on blood splattering, body position, and intoxication. In pro se assignment of error number 4D, defendant contends his counsel was ineffective for failing to object to the court’s instruction to the jury on specific intent because “the real legal question was whether [the defendant] was ‘so intoxicated’ as to preclude the existence of any specific intent on his part to commit the offense.” ’
Initially, we note that a claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses evidence needed to’ decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94), 643 So.2d 139.
A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish that his trial attorney was ineffective, defendant must first show that the attorney’s performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial; defendant must prove actual prejudice before relief will be granted. It is not sufficient for defendant to show that the error had some 117conceivable effect on the outcome of the proceeding. Bather, he must show that, but for the counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Further, it is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-860 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993).

NOTICE OF INTOXICATION

During the questioning of Forensic Pathologist Dr. Emil M. Laga, the de *804 fense attempted to question Dr. Laga concerning Holt’s blood alcohol level as stated in the autopsy report. The State objected, arguing that the defense had been supplied with the toxicology report, but had failed to notify the State of an intent to use intoxication as a defense pursuant to La. C.Cr.P. art. 726, and thus, the report was not admissible. The defense argued that it wished to establish Holt’s blood alcohol level merely to corroborate defendant’s testimony that he and Holt drank heavily prior to their fight. The court sustained the objection “[f]or the time being[.]”
Subsequently, over the State’s objection, trial defense counsel was permitted to question Dr. Laga as to the results of Holt’s blood screening for alcohol, more particularly, that the screening showed that Holt’s blood alcohol level was .26. Accordingly, defendant suffered no prejudice from trial defense counsel’s failure to provide the State with the notice at issue and we do not reach the argument of defective counsel performance on this basis. See Serigny, 610 So.2d at 859-860.

FAILURE TO INTERVIEW SPIECE; FAILURE TO DETERMINE EXACT LOCATION OF BULLET HOLE IN VICTIM’S CEILING; FAILURE TO PRESENT EXPERT TESTIMONY

Defendant’s allegations that trial defense counsel was ineffective for failing to interview Spiece, and for failing to present expert testimony on blood 1^splattering, body position, and intoxication are not subject to appellate review. An evidentiary hearing would be required to determine whether counsel’s decisions in these matters were strategic. See State v. Allen, 94-1941, p. 8 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, 1271, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433. Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial, rests with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993).
Because defendant suffered no prejudice from trial defense counsel’s failure to determine the exact location of the bullet hole in Holt’s ceiling,[10] we do not reach his argument of defective counsel performance on this basis. See Serigny, 610 So.2d at 859-860.

FAILURE TO OBJECT TO TRIAL COURT’S INSTRUCTION ON SPECIFIC INTENT

Defendant’s trial defense counsel was not ineffective for failing to object to the court’s instruction to the jury on specific intent. There was no basis for the objection. The court shall charge the jury as to the law applicable to the case. La. C.Cr.P. art. 802(1). Accordingly, these assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.

. Additionally, as the first basis of his motion for new trial, defendant asserted that the State introduced evidence of res gestae statements attributed to him without proper disclosure to the defense and over defense motion for mistrial.

. In a pre-trial motion for bill of particulars and discovery, the defense asked the State to furnish, "[t]he substance of any oral statement allegedly mad (sic) by the defendant in detail stating also the time, date and location of each alleged statement and the names, identities and addresses of those who witnessed or heard same.” The State responded, "The State will comply with this request.”

. Neither party referenced this court’s decision in the case of State v. Walker, 94-0587 (La.App. 1st Cir.4/7/95), 654 So.2d 451, writs denied, 95-1124, 95-1125 (La.9/22/95), 660 So.2d 470, which is on point.

. Even Nogess, 490 So.2d at 490, recognized the need for a showing of prejudice ("... it appears that the defendant was given an opportunity to meet the issue and we cannot say that the State’s failure to disclose the existence of the statement resulted in an unfair trial.”).

. For the first time on appeal, defendant additionally argues that the statement also qualified as non-hearsay pursuant to La. C.E. art. 801(D)(1)(b). The alleged error is not properly before this court. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C.Cr.P. art. 841(A); State v. Morris, 96-1008, p. 11 (La.App. 1st Cir.3/27/97), 691 So.2d 792, 799, writ denied, 97-1077 (La. 10/13/97), 703 So.2d 609.

. Decided under the res gestae law in effect prior to the enactment of the Louisiana Code of Evidence.

. Nor would the statement qualify under La. C.E. art. 801(D)(2) (the hearsay exception for "Personal, adoptive, and authorized admissions”), because the statement was not "offered against” defendant.

. Defendant references the testimony of Morgan City Police Department Lieutenant Michael Banks, who opined that Holt was standing when he was shot.

. See footnote 5, supra.

. See discussion of pro se assignment of error number 2, supra.