h McMANUS, Judge,
Defendant, Darrell Arwood, appeals his conviction of attempted aggravated incest, We affirm the conviction and sentence,
STATEMENT OF THE CASE
On August 12, 1997, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Darrell Arwood, with indecent behavior with a juvenile, in violation of LSA-R.S. 14:81. On or about March 9, 1998, the District Attorney for the Parish of Jefferson amended the bill of information to charge defendant with aggravated incest, in violation of LSA-R.S. 14:78.1. Defendant was tried by a six person jury, and found guilty of attempted aggravated incest. On October 19, 1999, the trial court sentenced the defendant to five years at hard labor with credit for time served. The trial court also ordered the defendant to pay the financial charges connected with any treatment necessary for C.A. The trial court also advised defendant that he must comply with the Scarlett letter law. The defendant timely appealed.
FACTS
Ms. Arwood testified that she was married to defendant for thirteen years. They were divorced in 1994. From that time until 1996, the two younger children, Chris A. and C.A., lived with Ms. Arwood in Gulfport, Mississippi. Ms. Arwood testified that her boyfriend, Mike, lived with her and her two children. The oldest child, D.J., lived with his father in a three bedroom house in Marrero, Louisiana. Chris A. testified that defendant’s friend, Scott, and D.J.’s friend, Christian, also lived in defendant’s house. Chris. A. and C.A. visited with defendant on alternate weekends.
| ¡.Deanna Miles, a clinical social worker, testified that she owns Families and Change. Ms. Miles evaluated C.A. in response to a court order by Judge Green of the Twenty-Fourth Judicial District Court to participate in mediation to resolve a *1268 child custody dispute. Prior to conducting the evaluation, Ms. Miles requested that each of the parties fill out a questionnaire. On her questionnaire dated November 16, 1996, Ms. Arwood expressed concern that defendant was behaving in a sexually inappropriate manner with her children. She also indicated that she was concerned about defendant’s drinking, drug use, and violent tendencies.
Ms. Miles conducted an interview with C.A. out of her mother’s presence. During this interview, C.A. disclosed that her father had “bad touched” her during her last weekend visit with him. C.A. stated that her father touched her inappropriately in his bed and in the bathroom. C.A. drew pictures of her father and Scott without clothes, indicating that she had seen them both naked. At this point, Ms. Miles stopped the interview and referred the matter to the Office of Community Services. Ms. Miles testified that she informed Judge Green of her interview with C.A. and discontinued mediation.
Ms. Arwood testified that she made an appointment with Ms. Miles pursuant to the court order requiring the parties to mediate their custody concerns. Ms. Ar-wood denied that she ever made allegations on the questionnaire that she had concerns that the defendant was sexually abusing any of her children. Ms. Arwood testified that she first heard of the sexual abuse allegations when Ms. Miles informed her that C.A. had disclosed that she had been inappropriately touched by her father and Scott. On the day after the interview with Ms. Miles, Ms. Arwood took C.A. to meet with Estelle Wilkins, a child protection investigator with the Office of Community Services.
Ms. Wilkins conducted an interview with C.A. out of her mother’s presence on November 28, 1996. During the interview, C.A. repeated the allegations to Ms. Wilkins that defendant and his roommate, Scott Martin, abused her. Ms. Wilkins’s office determined that C.A.’s comments were consistent with those of abused children and, |atherefore, considered the report “valid.” Ms. Wilkins made an appointment for C.A. at the Children’s Advocacy Center.
Officer Omalee Gordon, a Gretna police officer assigned to the Children’s Advocacy Center, conducted a taped interview with C.A. on November 26, 1996. The videotaped interview that Ms. Omelee Gordon conducted with C.A. when she was seven was admitted as evidence at trial and played for the jury. During the taped interview, C.A. related that her father and Scott, both naked, got into the shower or bathtub with her while she was bathing. They both got out when she demanded that they leave. C.A. also stated that she regularly slept with her father in his bed, and he would, on occasion, take off his clothes, pull up her clothing, and get on top of her. C.A. also stated that Scott was in the bed with her when her father lay on top of her. According to C.A., the abuse began when she was five years old and stopped when she was six years old.
At trial, C.A., age nine, testified that defendant and his friend Scott “bad touched” her. C.A. testified that she slept with defendant alone in his bedroom at his house when she visited him. C.A. further testified that she slept with her clothes on, but defendant slept in the nude. C.A. stated that defendant touched her private parts, over her clothes, with his hand. C.A. further testified that defendant has taken a bath with her, and both of them had their clothes off. C.A. stated that no one other than defendant and Scott has ever touched her inappropriately.
Dr. Scott Benton, an assistant professor of clinical pediatrics at the LSU School of Medicine in New Orleans, was accepted by the court as an expert in forensic medical examination as it relates to child sexual and physical abuse. Dr. Benton examined C.A. at Children’s Hospital in New Orleans on December 20, 1996. Dr. Benton testified that his examination consists of taking a history, conducting a physical *1269 exam, and performing laboratory tests. Dr. Benton testified that C.A. was reluctant to discuss the matter with him at first. Initially, C.A. denied that she had experienced any inappropriate touching. However, Dr. Benton continued to question her and she disclosed that her father and Scott were in the shower with her and touching her all over her body, including her |4genital area. When Dr. Benton conducted the physical exam, he examined C.A.’s hymen with a culposcope, which showed that C.A.’s hymen appeared to be abnormal on one side where it was very narrow and thin, whereas it should have been thick all the way around. Dr. Benton testified that he rarely sees that sort of hymen in a child who has not been sexually abused. Dr. Benton further testified that the condition of C.A.’s hymen resulted from a blunt penetrating trauma and that it could not have been caused by a straddling accident such as bicycle riding, horse back riding, gymnastics, or the balance beam. Dr. Benton explained that a straddling accident would have caused injury to the outer pubic area and C.A. showed no such sign of injury. Dr. Benton opined, with reasonable medical certainty, that this child sustained a blunt penetrating trauma to her hymen, which was most likely of a non-accidental nature.
Chris A. testified that his brother’s friend Christian and his father’s friend, Scott Miller, lived with his father for a short time. Chris A. testified that there were three bedrooms in his father’s house. D.J. occupied one room, Scott Martin occupied the second bedroom, and defendant occupied the third bedroom. Chris A. often slept on the sofa in the living room and C.A. sometimes slept with Chris A. in the living room or with her father in his bedroom. Chris A. testified that he and C.A. visited their father every other weekend before November of 1996. According to Chris A., conversations regarding the sexual abuse allegations between C.A. and their mother were always initiated by C.A. and their mother did not attempt to influence C.A. regarding her statements.
D.J. testified that he lived with his father in 1996. He remembers the weekend in November of 1996 when his father last had visitation rights with Chris A. and C.A. At his father’s house, there were two beds for four people. After a while, defendant bought another bed and Scott slept in it. D.J. testified that C.A. would sometimes sleep in Scott’s bed when Scott slept on the sofa or C.A. would sleep in their father’s room. He testified that he never saw any improper conduct between his sister and his father.
Defendant took the stand and denied sexually abusing his daughter. He testified | sthat he had a three bedroom house in 1995, but his daughter did not have furniture in her bedroom, therefore, she slept on the sofa or in the master bedroom. Defendant admitted that C.A. sometimes slept with him in his room. Scott Miller lived with him for about two months in August of 1996. He testified that Scott would stay over from Wednesday night to Saturday morning. Defendant testified that he always slept in shorts, and sometimes wore a shirt. Defendant further testified that he never took a shower with his daughter and that one of his female neighbors usually bathed C.A.
After defendant testified, C.A. was called by the state as a rebuttal witness. C.A. testified that no one coached her on her testimony. She further testified that she bathed herself and that a neighbor never helped her bathe.
SUFFICIENCY OF EVIDENCE
Defendant argues that the State failed to prove that defendant committed attempted aggravated incest because there was no evidence of intent. Defendant further argues that Ms. Arwood’s testimony was not reliable. The State responds that there is sufficient evidence to support the conviction and Ms. Arwood’s testimony was not essential to support the conviction.
*1270 The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 318-320, 99 S.Ct. 2781, 2788-2790, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Rosiere, 488 So.2d 965, 968 (La.1986). Under Jackson, the standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Rosiere, supra,; State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 816, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
| ^Defendant was convicted of attempted aggravated incest. LSA-R.S. 14:78.1, the aggravated incest statute, provides in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
The attempt statute, LSA-R.S. 14:27, provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In order to support a conviction for attempted aggravated incest, the State is required to prove that the defendant specifically intended to engage in an act listed in Subsection B of LSA-R.S. 14:78.1 with his daughter. Such proof is indispensable, as specific intent to accomplish the offense is the sine qua non of the criminal offense of attempt. State v. Trackling, 609 So.2d 206, 207 (La.1992). Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the |7circumstances and actions of the accused. See State v. Graham, 420 So.2d 1126, 1128 (La.1982); and State v. Lewis, 698 So.2d 456, 459 (La.App. 5 Cir.1997), writ denied, 716 So.2d 881 (La.1998).
Defendant argues that the evidence showed that Ms. Arwood encouraged C.A. *1271 to make the allegations because of the bitterness that followed their divorce. However, both C.A. and Chris A. testified that Ms. Arwood never encouraged C.A. to make allegations against defendant.
Defendant further argues that Ms. Ar-wood’s testimony is not reliable because Ms. Arwood testified that she first learned of the abuse during the meeting with Ms. Miles, while Ms. Miles testified that Ms. Arwood indicated, on a questionnaire, that she suspected that defendant was sexually abusing one of their children. While it appears that Ms. Arwood’s testimony is inconsistent with Ms. Miles’s testimony on that point, Ms. Arwood’s testimony is not essential to support the conviction because C.A. reported the abuse to other people. Therefore, it is of no consequence whether the jury found Ms. Arwood’s testimony credible.
The evidence at trial shows that the defendant attempted to commit a sexual act on C.A. C.A.’s testimony alone provided enough evidence to support a conviction of attempted aggravated incest. C.A. reported to several people that her father touched her private parts with his hand and that he would be undressed when he pulled her clothes up and climbed on top of her. C.A. testified that he and Scott Miller would take showers with her. Further, C.A. drew pictures of both Scott and defendant naked, indicating that she had seen them undressed.
During the videotape interview with Officer Gordon, C.A. related that her father and Scott both got into the shower or bathtub with her while she was bathing until she demanded that they leave. She also told Officer Gordon that defendant, while undressed, would get on top of her and pull her clothes up. She related the same incidents to Ms. Miles and Ms. Wilkins.
The testimony of the victim alone can be sufficient to establish the elements of a | Ssexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Johnson, 98-1017 (La. App. 5 Cir. 3/30/99), 735 So.2d 105, 108-109. In this case, the State also produced the testimony of Dr. Benton to support C.A.’s testimony. Dr. Benton testified that a pelvic examination using a culposcope showed that C.A.’s hymen was narrowed and thin in one area, whereas it was normal in the other areas. Dr. Benton also opined that such a condition is indicative of child sexual abuse. The jury apparently found C.A.’s testimony credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App.5 Cir. 4/29/97), 694 So.2d 1052, 1056. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130, 132 (La.App. 5 Cir.1985).
The credibility of witnesses will not be reweighed on appeal. State v. Rowan, supra. “[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.” State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293.
Therefore, we find that the evidence was sufficient to sustain the defendant’s conviction for attempted aggravated incest.
ERRORS PATENT DISCUSSION
The record in this case was reviewed for errors patent in accordance with LSA-C.Cr. P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Such a review revealed no errors patent.
For the foregoing reasons, we affirm defendant’s conviction and sentence.
AFFIRMED.