GUIDRY J-
|2The defendant, Derichard W. Lavy, was charged by grand jury indictment *1004 with one count of second degree murder, a violation of La. R.S. 14:80.1, and pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals, contending: the evidence was insufficient to support the verdict; the trial court erred in denying full cross-examination of a witness; the trial court erred in curtailing the right to full and effective voir dire; the trial court erred in failing to rule on the defendant’s motion to allow the jury to view the crime scene; and the trial court erred in failing to recognize its ability to impose a sentence less than the sentence provided by the second degree murder statute. For the following reasons, we affirm the conviction and sentence.
FACTS
Rita Faye James testified she was the cousin of the victim, Donnie Williams, and had lived on Swan Street in Baton Rouge her entire life. She was familiar with the defendant because he and she had been “raised up around there together.”
On October 2, 2009, James approached the victim on Swan Street to ask for money for a Coke. He gave her $5, and she walked to a drink machine in front of Roger Parker’s house. After James purchased a drink, she gestured to her friend “Madison,” who was in his vehicle at the corner of Somerset and Swan Streets, to drive to her. Madison stopped before a mailbox near the Coke machine, and James told him to move up to let an “old lady” in a beige car pass. James testified that, before Madison moved, she heard approximately six shots. She looked in the direction of the victim and saw shots being fired at him from a blue Oldsmobile, with hands sticking out of the driver’s-side window. The blue car passed James, Land the defendant looked her “dead in [her] face.” She also recognized Hakeem Profit in the front of the car and someone she did not recognize in the back. It was daylight, but beginning to get dark, James had seen the defendant in the blue Oldsmobile many times and had jump-started the vehicle when it had a bad battery. The victim suffered a fatal gunshot wound to his shoulder and a “potentially life threatening” gunshot wound to his lower abdomen. On October 5, 2009, a blue Oldsmobile Cutlass, registered to the defendant’s brother, was recovered close to the scene of the incident.
James subsequently selected the defendant’s photograph from a six-person photographic array. She indicated she last saw him “when he was shooting [the victim].” She also identified the defendant in court as the person she saw shooting the victim. Additionally, James selected Profit’s photograph from a six-person photographic array. She indicated he was “in the car when they was (sic) shooting.” She testified the defendant and Profit did not look alike. On cross-examination, James indicated the Coke machine did not take $5 bills, so she had to go to Shonda Parker’s house for change before she could use the machine.
Shonda Parker testified she lived on Swan Street. She indicated the defendant and Profit were related to one of her children. She stated she was in her house on the day of the incident, when she heard shots fired. She went to the door to check on her children, who were outside, and saw the victim “hit the ground.” She testified “the car shot past so fast I couldn’t see what kind of car it was.” She “thought” the vehicle was gray. She claimed she did not recognize the car and did not see the defendant in the car. She indicated she did not want to come to court and testify. *1005 Baton Rouge Police Department Detective Bryan Ballard interviewed Parker at the scene of the incident. At that time, Parker indicated she had seen a blue Oldsmobile at the scene, driven by “Richard,” and in which “Hakeem” was a |4passenger. Subsequently, Parker refused to cooperate in the investigation.
Meldrekia Foster testified she was the defendant’s sister. She indicated she and her family, including the defendant, traveled to a Southern University Football game in Jackson, Mississippi, on October 2, 2009. She claimed the defendant arrived at her house on Prescott Road to travel to the game at approximately 4:30 p.m. and was in a car with her and her two nieces between 5:30 p.m. and approximately 9:00 p.m., when they arrived in Jackson.
SUFFICIENCY OF THE EVIDENCE
In assignment of error number one, the defendant contends the evidence was insufficient to support the conviction, because James gave testimony that conflicted with itself and the testimony of other witnesses.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, which states in part, “assuming every fact to be proved that the evidence tends to prove,” in order to convict, every reasonable hypothesis of innocence must be excluded. State v. Wright, 98-0601, p. 2 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, units denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 00-0895 (La.l1/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to | r,conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 98-0601 at p. 3, 730 So.2d at 487.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Henderson, 99-1945, p. 3 (La.App. 1st Cir.6/23/00), 762 So.2d 747, 751, writ denied, 00-2223 (La.6/15/01), 793 So.2d 1235.
Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a *1006 reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant’s identity as the perpetrator of that offense. The verdict rendered indicates the jury rejected the defense theory that the defendant was not the person who shot the victim from the blue Oldsmobile. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). No such hypothesis exists in the instant [ficase. The verdict also indicates the jury accepted the testimony of James, while rejecting the alibi testimony presented by the defense. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429, p. 5 (La.App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331. Further, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207, p. 14 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306, pp. 1-2 (La.1/21/09), 1 So.3d 417, 418 (per cu-riam).
This assignment of error is without merit.
LIMITATION OF CROSS-EXAMINATION
In assignment of error number two, the defendant argues the trial court erred in preventing full cross-examination of James concerning the sentence she received on her forgery conviction.
Louisiana Code of Evidence article 609.1, in pertinent part, provides:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has |7only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense....
On direct examination, James indicated she had been convicted of forgery in 2003. On cross-examination, the defense asked her if she had been placed on probation, and she replied affirmatively and further stated she was no longer on probation. The defense asked whether James had been “revoked.” The State objected that the question was beyond the permissible scope of questioning, and the trial court sustained the objection.
*1007 Thereafter, the defense asked James if she had completed her probation satisfactorily, and the State objected. The trial court sustained the objection. The defense argued it was entitled to know the sentence received by James. The trial court disagreed, noting the defense had made no allegation that James had received favorable treatment for her testimony. Initially, we note the defense failed to proffer evidence that James’s probation had been revoked. Only matters contained in the record can be reviewed on appeal. State v. Vampran, 491 So.2d 1356, 1364 (La.App. 1st Cir.), writ denied, 496 So.2d 347 (La.1986). To preserve the right to appeal a trial court ruling that excludes evidence, the defendant must make the substance of the evidence known to the trial court. La. C.E. art. 103(A)(2). Because the defendant failed to make a proffer, he is barred procedurally from advancing this assignment of error. See State v. Lynch, 94-0543, pp. 17-18 (La. App. 1st Cir.5/5/95), 655 So.2d 470, 480, writ denied, 95-1441 (La.11/13/95), 662 So.2d 466. Moreover, the trial court correctly found that whether or not James’s probation had been revoked was beyond the scope of La. C.E. art. 609.1.
This assignment of error is without merit.
| «LIMITATION OF VOIR DIRE
In assignment of error number three, the defendant argues the trial court curtailed his right to full and effective voir dire by refusing to allow questioning concerning actual cases of wrongful convictions based on eyewitness misidentification.
The accused has the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. La. Const, art. I, § 17(A); see La. C. Cr. P. art. 786. The purpose of the voir dire examination is to test the competency and impartiality of prospective jurors. Wide latitude should be given the defendant during voir dire so that he may discover bases for challenges for cause and, within reasonable limits, secure information for the intelligent exercise of his peremptory challenges. Furthermore, the scope of the voir dire examination is within the sound discretion of the trial judge, and his rulings thereon will not be disturbed in the absence of a clear abuse of discretion. State v. Jackson, 450 So.2d 621, 628 (La. 1984); see also La. C. Cr. P. art. 786. Whether a particular question is essential to full voir dire is best governed by a liberal discretion on the part of the trial judge under the prevailing facts and circumstances, and the disallowance of a proper question will not automatically create reversible error, for, in reviewing the fairness of the ruling, the entire examination must be considered. Jackson, 450 So.2d at 628.
During voir dire, the defense asked prospective juror Watkins if he knew Henry James, and Watkins replied negatively. The defense asked prospective juror Bajón if she knew Michael Williams, and Bajón replied negatively. Thereafter, defense counsel stated, “[w]ell, let me tell you about those two individuals, if I may. Henry James was a man — it was in the paper last week and I’m going to show you the clip in a minute — spent 30 years in jail at Angola.” The State objected to the defense referencing facts from another case “that’s not even been brought up by the |fl[prospective] jurors.” The trial court ruled if the prospective jurors had indicated they knew Henry James or Michael Williams, it might allow the defense to continue with its line of questioning, but it would not allow the defense to tell the prospective jurors “what’s been in the *1008 newspaper or ask them to comment on it.” The court further stated:
What you want to do is you want to talk to [the prospective jurors] about prior cases where people have been exonerated when they were innocent, but convicted. That has nothing to do with this case. You can talk to them about the burden of proof and those kinds of things, but I can’t — but I’m not going to allow you to bring up other cases or other facts that they know nothing about and bombard them with facts.
The trial court stated the defense could talk to the prospective jurors, “generally speaking,” about people who are misidentified, about their experiences with misiden-tification, “their feelings or their belief about eyewitness identification,” and even use hypothetieals, as long as the hypotheti-cals were not “did you hear about this case, this guy had a [hundred] eye witnesses[,] and they were all wrong[,] and he went to jail for a [hundred] years?”
Subsequently, the defense questioned prospective juror Watkins concerning his opinion about eyewitness identification, and he indicated it “can be questionable at times.” The defense asked prospective juror Watkins if he thought the accuracy of eyewitness identification was “100 percent,” and he answered negatively. The defense asked prospective juror Dixon, if she had ever been in the mall, had seen someone in the distance that she thought she knew, approached them, but then realized she was mistaken. Dixon answered negatively. Thereafter, the defense asked the entire panel of prospective jurors if any of them had the experience it had referenced. Two prospective jurors answered affirmatively, and a third stated, “[tjhat’s a reasonable thing.”
Subsequently, the defense asked prospective juror O’Brien if someone gives a | mdescription of something, should they give as much description as possible for witness identification, and she answered, “[ejvery little detail helps.” In response to further questioning, she indicated the details would consist of “height, weight, coloring, clothing, any impairment, the way they move, just....” Defense counsel asked, “[w]hat if they can’t see the height, the weight of a person? Say they’re in an automobile or something.” Prospective juror Presedo answered the height would then be the height relative to the roof of the car.
The voir dire examination reviewed in its entirety indicates the trial court did not clearly abuse its discretion in refusing to allow questioning of prospective jurors concerning unrelated cases from the newspaper. The trial court did not prevent the defense from testing the competency and impartiality of the prospective jurors. The defense had no right to select only “friendly” jurors. See Jackson, 450 So.2d at 628 (“[w]hatever the practical desire of trial counsel, the recognized purpose of full voir dire is not to pack the jury with persons favorable to the defendant or to the [S]tate.”).
This assignment of error is without merit.
MOTION TO VIEW THE CRIME SCENE
In assignment of error number four, the defendant argues the trial court erred in failing to rule on, and thus, denying, the motion to allow the jury to view the scene of the crime.
It is well settled that the decision regarding whether to grant or deny a motion to have a jury view the scene of a crime is within the sound discretion of the trial court, and such a ruling will not be disturbed on appeal absent an abuse of that discretion. La. C. Cr. P. art. 762(2); *1009 State v. Duvall, 97-2178, p. 13 (La.App. 1st Cir.12/28/99), 747 So.2d 793, 801, writ denied, 00-1362 (La.2/16/01), 785 So.2d 838.
On October 20, 2011, the Thursday before trial was set to begin on Monday, the defense moved to allow the jury to view the crime scene. The defense argued it Inwas necessary for the jury to view the place where the crime was alleged to have occurred, because the incident occurred near sunset and the location of the witness at the scene was unknown.
On the day of trial, the defense advised the court it had moved to view the crime scene “late last week.” The court took the motion under advisement noting, it was unlikely to grant the motion, but would reconsider it if it was convinced it was necessary. Defense counsel replied, “Yeah. I understand. We have pictures and just didn’t know at that point whether — uh—how those pictures would turn out from the State and myself, so.... ” The court asked the defense if it had pictures, and the defense replied affirmatively. The court asked if the defense was satisfied with the pictures, and the defense stated it was “not sure,” but “may be.” The court proposed to hold the matter in abeyance until the trial progressed a little further, noting “[i]t may become obvious that that’s an important factor[,]” and the defense agreed.
During trial, James identified State exhibits 40 through 46 as photographs of Somerset and Swan. She indicated that the houses, trees, and drink machine depicted in the photographs were in the same places they had been at the time of the incident, but the photographs were “brighter” than at the time of the incident. The photographs were introduced into evidence without objection. Thereafter, the defense also introduced photographs of various portions of Swan Street into evidence. The defense did not reurge the motion to view the crime scene.
The motion to view the crime scene was abandoned. It is ordinarily incumbent upon the proponent of a motion to move for a hearing date on that motion. Otherwise, it may be considered that the motion has been abandoned. State v. Wagster, 361 So.2d 849, 856 (La.1978); State v. Carter, 96-0337, p. 7 (La.App. 1st Cir.11/8/96), 684 So.2d 432, 437.
This assignment of error is without merit.
JjgIMPROPER SENTENCING In assignment of error number five, the defendant argues the trial court erred in failing to recognize it had the authority to impose a sentence of less than life without parole, and thus, imposed a sentence that was excessive as to him.
Louisiana Code of Criminal Procedure article 881.1, in pertinent part, provides:
A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
*1010 Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B).
In State v. Dorthey, 628 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounts , to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
1 ^However, the holding in Dorthey was made only after, and in light of, express recognition by the court that, “the determination and definition of acts which are punishable as crimes is purely a legislative function. It is the Legislature’s prerogative to determine the length of the sentence imposed for crimes classified as felonies. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional.” Dor-they, 623 So.2d at 1278 (citations omitted).[1]
In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court re-examined the issue of when Dor-they permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. The court held that to rebut the presumption that the mandatory minimum sentence was constitutional, the defendant had to “clearly and convincingly” show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Johnson, 97-1906 at p. 8, 709 So.2d at 676.
At the sentencing hearing in the instant case, after the trial court denied motions for a post verdict judgment of acquittal and for a new trial, the defense objected to the court’s rulings, waived delays, and asked for sentencing. Thereafter, the court stated, “[t]he court is mandated by law as to what sentence you are to receive. Therefore, it is the sentence of this court that you be confined to the Department of Corrections for life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.”
114Initially, we note the defendant failed to make or file a motion to reconsider sentence in this matter. Accordingly, review of this assignment of error is proeedurally barred. See La. C. Cr. P. art. 881.1(E); State v. Duncan, 94-1563, p. 2 (La.App. 1st Cir.12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). Moreover, the trial court’s statement that it was “mandated by law” as to the sentence to be imposed was a reference to the sentence set forth in La. R.S. 14:30.1(B), which is “mandatory,” unless the defendant rebuts the presumption that the sentence is constitutional and establishes he is “exceptional,” as set forth in Dorthey and Johnson. Further, no substantial rights of the accused were affected, because the defendant failed to clearly and convincingly show that, because of unusual circumstances, he was a victim of the legislature’s failure to assign sentences that were meaningfully tailored to his culpability, the *1011 gravity of the offense, and the circumstances of the case. Accordingly, there was no reason for the trial court to deviate from the provisions of La. R.S. 14:30.1(B) in sentencing him. See La. C. Cr. P. art. 921.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. The sentencing review principles espoused in Dorthey were not restricted in application to the mandatory minimum penalties provided by La. R.S. 15:529.1. Henderson, 99-1945 at p. 19 n. 5, 762 So.2d at 760 n. 5.