NOT FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0124

STATE OF LOUISIANA

VERSUS

KYRON BOURDA

Judgment Rendered: **SEP 1 5 2023**

* * * * *

On Appeal from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Trial Court No. 592931

Honorable F. Hugh Larose, Judge Presiding

* * * * *

Kristine Russell
District Attorney
Greg Stahlnecker
Shaun George
Joseph S. Soignet
Assistant District Attorneys
Thibodaux, LA

Attorneys for Plaintiff-Appellee,
State of Louisiana


Bertha M. Hillman
Covington, LA

Attorney for Defendant-Appellant,
Kyron Bourda

* * * * *

BEFORE: McCLENDON, WOLFE, AND HESTER, JJ.

**HESTER, J.**

The defendant, Kyron Bourda, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. After a trial, a unanimous jury found the defendant guilty as charged. The trial court denied a motion for new trial and a motion for post-verdict judgment of acquittal filed by the defendant. The trial court then sentenced the defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error to the sufficiency of the evidence. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On December 22, 2018, Deputy Clay Blanchard and Deputy Joe Scorintino, III, both with the Lafourche Parish Sheriff's Office (LPSO), began investigating a missing person's report initiated by Misty Carr after she was unable to contact her longtime friend, Rani Pinel (the victim). Carr indicated that she last spoke to Pinel over the phone on December 18, 2018, and that she believed Pinel was with the defendant[1] at the time.

Pinel's father, Harry Pinel, informed Deputy Scorintino that he last saw Pinel on December 17, 2018, and at that time she was driving his white 2014 Chevrolet Silverado. Mr. Pinel observed that a black male was with her, but he could not identify him. Assisted by OnStar tracking services, Deputy Blanchard and Deputy Kendra Danos located the truck in a cane field off of Lasseigne Road in Lafourche Parish. Pinel's body was discovered on the passenger side floorboard of the truck. Pinel had lacerations all over her face and body and appeared to have been badly beaten.

---

[1] While the nature of the defendant's relationship with Pinel was not described at trial, Carr testified that she was aware of Pinel spending time with the defendant during the months prior to her death, and while the defendant's DNA was being collected pursuant to the search warrant, he referred to Pinel as "his girl."

2

The truck was towed to the law enforcement complex for processing. There were bloodstains throughout the truck, including the driver's side and backseat, and several swabs were collected from the truck. From the rear passenger side floorboard, detectives discovered three interlocking metal tire jack extension rods with suspected blood on them. An autopsy was performed on Pinel, during which a sexual assault kit was utilized to collect DNA evidence that was sent, along with evidence collected from the truck, to the Louisiana State Police Crime Lab (LSPCL) for testing.

Shevie Cooley, who lives on Lasseigne Road, saw the truck pass in front of her trailer, turn into the "head land" and then into the cane field at about 5:00 p.m., on December 18, 2018. Moments later, she heard the engine revving and tires spinning, as the truck was apparently stuck in the mud. A few minutes later, she saw two men walking out of the cane field. She briefly spoke to the two men and during the conversation, she noticed that one of them had tattoos on his neck that reminded her of a group of music symbols.

LSPCL notified LPSO that DNA obtained from blood collected from the truck was entered into the CODIS database and matched the defendant's profile. On December 28, 2018, Lieutenant Robert Mason, a criminal investigator with LPSO, obtained and executed a search warrant to photograph and obtain a buccal swab from the defendant. While executing the warrant, Lieutenant Mason observed and photographed scrapes on the defendant's hands and left shoulder.[2] Lieutenant Mason further obtained and executed search warrants for the cellphone records of Pinel and the defendant. After the results of the LSPCL testing were received, the defendant was arrested for Pinel's murder.

---

[2] Lieutenant Mason also observed that the defendant had a large tattoo on his neck as well as less visible tattoos on his face (on his forehead and near his eyes). Lieutenant Mason noted that the defendant's neck tattoos "especially" stood out.

3

After viewing a news article on the defendant's arrest, released on September 12, 2019, which contained a photograph of the defendant, Cooley called the LPSO and identified the defendant as the person with the neck tattoos who she saw exiting the cane field on December 18, 2018. She again identified the defendant at trial.[3]

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant avers that the evidence presented at trial is insufficient to support the verdict. He argues that the evidence did not exclude every reasonable hypothesis of innocence or prove his identity as the killer in this case.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. See La. Code Crim. P. art. 821(B); **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Laue**, 2020-0225 (La. App. 1st Cir. 12/30/20), 326 So.3d 267, 273, writ denied, 2021-01329 (La. 11/17/21), 327 So.3d 993, cert. denied, ___ U.S. ___, 142 S.Ct. 2659, 212 L.Ed.2d 612 (2022). When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a

---

[3] The defendant did not testify at trial.

4

reasonable doubt. **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Second degree murder is defined, in pertinent part, as "the killing of a human being: [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); **State v. Coleman**, 2017-1045 (La. App. 1st Cir. 4/13/18), 249 So.3d 872, 877, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155. Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **Id.**

The State bears the burden of proving those elements, along with the burden to prove the identity of the defendant as the perpetrator. **Id.** When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **Id.** at 877-78.

Carr testified at trial that she and Pinel became friends during childhood and, prior to Pinel's death, they communicated weekly. At the time of Pinel's death, Carr lived in Texas and Pinel lived in Louisiana. Carr testified that Pinel told her about the defendant and that Carr had a five-minute phone conversation with the defendant in mid-October 2018, but she never met him. When Pinel called Carr in November, Pinel told Carr she was with the defendant, and Carr heard the defendant's voice in the background.

5

Around 9:00 a.m., on December 18, 2018, after Pinel's father called Carr looking for Pinel, Carr called Pinel and told her that her father was worried about her. Pinel told Carr that she would call her father. Carr testified that during that phone call, Pinel was speaking softly and slowly, and nearly whispering, which was opposite from her usual cadence. Carr also testified that during that phone call she heard the defendant's voice in the background, and as Pinel was telling Carr that she would call her back, the phone disconnected. Carr never heard from Pinel again.

The next day, Pinel's father called Carr and told her that Pinel did not come home. He asked Carr to call Pinel again. Carr was unable to make contact with Pinel and observed that Pinel had not even checked her messages. Carr believed something was wrong because Pinel normally checked her messages and "always responded to [her] no matter what." Carr called the Sheriff's Office and they opened the missing person's investigation. Carr further testified that she was aware that Pinel struggled with cocaine use, but she had never seen Pinel use cocaine and had never met any of her contacts for procuring drugs.

Cooley, the Lasseigne Road resident who saw two people coming out of the cane field on December 18, 2022, testified that after the two males walked out of the cane field, she observed them stomping their feet to remove the mud from their shoes. She asked them if their truck was stuck and they indicated that they ran out of gas and were walking to the home of a nearby relative. Cooley asked them where they were coming from, and they continued to walk briskly as they conversed. Cooley noted that her interaction with them lasted only a "few seconds."

Based on Cooley's statement and the defendant being the last person known to be with Pinel, Detective Chris Eagan with the Terrebonne Parish Sheriff's Office, compiled a black and white photographic lineup that included a photograph of the defendant. Cooley was shown the photographic lineup, but she did not select the defendant. Rather, the person selected by Cooley was deceased at that time and

could not have been the perpetrator. Cooley testified that she was looking for someone with similar neck tattoos when she spent five minutes making a selection from the lineup. Cooley's subsequent identification of the defendant took place after she saw an LPSO article on Facebook that featured a color photograph of the defendant.[4] At trial, Cooley again positively identified the defendant as one of the individuals who walked passed her house from the cane field that day.

Lieutenant Mason testified that while photographing and collecting DNA from the defendant, the defendant said that Pinel was his girl, that he would not hurt her, and that he last saw her Monday or Tuesday morning (December 17, or December 18, 2018), when she dropped him off at Johnson Ridge in the Schriever, South Thibodaux area. Lieutenant Mason explained the phone location data at trial.[5] The records show that between approximately 9:01 a.m. and 11:30 a.m., on December 18, 2018, the defendant's phone and Pinel's phone were at the same general location. At approximately 1:53 p.m., both phones were located in Raceland, and entered the Houma area about twenty minutes later. Pinel and the defendant's phones continued to travel towards Thibodaux until approximately 4:12 p.m. Thereafter, the defendant's phone became inactive while Pinel's phone continued to travel towards Thibodaux and ultimately to the cane field on Lasseigne Road after 6:00 p.m. Pinel's last outgoing call, estimated at about 2:00 p.m. that day, was with Marylynn Helmer, Pinel's friend of twenty years.

Two days later, on December 20, 2018, the defendant's phone was reported to his provider as stolen with a request for the services to be deactivated. Pinel's

---

[4] Regarding her identification of the defendant, Cooley testified, "So I scrolled back and ... I read the article ... And at that point, I could fell [sic] the spidy little sensors or whatever ... but whenever I looked at his face again ... It was like everything just all clicked. Like the light bulb went off."

[5] Pinel's phone was recovered from her father's truck where her body was found. Lieutenant Mason obtained search warrants for the call detail records and GPS data from the cell phones of both Pinel and the defendant.

phone records showed that on December 22, 2018, the day the police found the truck and Pinel's body, she received text messages from someone who identified themselves as "Nooney," a nickname known to be used by the defendant.[6] Lieutenant Mason observed that there was no delay between messages (to allow time for a response) and seemingly no response was received. Lieutenant Mason confirmed that he never found and was therefore unable to search the defendant's phone that was reported stolen.

Dr. Ellen Connor, an expert in forensic pathology who performed the autopsy in this case, testified that Pinel had abrasions, lacerations, contusions, and bruises, some of which were inflicted postmortem.[7] Dr. Connor compared Pinel's injuries to the tire jack extension rods recovered from the truck and found that some of her injuries were consistent with being inflicted by the metal rods.[8] Dr. Connor testified that Pinel's cause of death was asphyxia due to suffocation and strangulation and multiple blunt force injuries.

Elizabeth Hamilton, an expert in DNA analysis, processed the DNA evidence in this case, including the evidence collected at the scene, the defendant's DNA swabs, and the sexual assault kit. Based on her testing, the defendant could not be excluded as a contributor of DNA profiles obtained from suspected blood collected from the steering wheel and blinker knob of the truck. The defendant further could

---

[6] Specifically, the following five messages were sent within forty seconds: (1) "Wya sis this nooney I need u I'm stuck no ride[;]" (2) "Call me please[;]" (3) "HMU asap I tried calling[;]" (4) "Still tricking huhn[;]" and (5) "Smh[.]"

[7] Dr. Conner also performed a toxicology report on Pinel and testified that her blood showed benzoylecgonine, a cocaine metabolite, amphetamine, methamphetamine, and citalopram, an antidepressant medication. These substances were not attributed to Pinel's cause of death.

[8] Dr. Connor's testimony was consistent with Detective Terry Poiencot's testimony that he seized the rods because he believed they were used to beat Pinel, based on his observation of her injuries, which he stated appeared to have been caused by blunt force trauma.

not be excluded as a contributor to DNA profiles obtained from the key fob, both ends of the tire jack handle, Pinel's hands, and Pinel's left-hand fingernail.[9]

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Alexander**, 2014-1619 (La. App. 1st Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Lavy**, 2013-1025 (La. App. 1st Cir. 3/11/14), 142 So.3d 1000, 1006, writ denied, 2014-0644 (La. 10/31/14), 152 So.3d 150.

Herein, the defendant challenges Cooley's identification and hypothesizes that Pinel's killing could have been related to her drug use or committed by a person who stole his cell phone. However, the verdict indicates that the jury rejected the defendant's hypotheses of innocence. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. Regarding her lineup selection being inconsistent with her subsequent identification of the defendant, Cooley explained that since the lineup photograph was darker, the prominent neck tattoos that she remembered from the day in question were more visible on the defendant's in-color booking photograph. During the trial, she again positively identified the defendant as one of the persons she saw walking out of the cane field after the truck got stuck in the field with Pinel's

---

[9] Pinel could not be excluded as a DNA contributor from suspected blood and non-blood samples from the tire jack handle.

body therein. Considering the testimony that the defendant was the last known person with Pinel, cell phone records showing that the defendant's phone was with Pinel's phone the day that the truck was seen entering the cane field, the identification by Cooley, and the defendant's blood and DNA being found in the truck, on the believed murder weapon, and under Pinel's fingernail, we find that the jury could have rationally concluded that the defendant murdered the victim in this case.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we find that based on the record before us, a rational trier of fact could have found that the State proved beyond a reasonable doubt all of the elements of second degree murder and the defendant's identity as the perpetrator of the offense. Thus, the sole assignment of error lacks merit.

**CONVICTION AND SENTENCE AFFIRMED.**