# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

* * * * * * *

## 2024 KA 0399

## STATE OF LOUISIANA

## VERSUS

## JOSHUA STEPHENS

JUDGMENT RENDERED:   **FEB 2 1 2025**

* * * * * * *

Appealed from the Twenty-Third Judicial District Court
Parish of Ascension • State of Louisiana
Docket Number 35,827 • Division B

The Honorable Cody Martin, Presiding Judge

* * * * * * *

| | |
|---|---|
| Joshua Stephens, D.O.C. # 626275<br>*Louisiana State Penitentiary*<br>Angola, Louisiana | APPELLANT<br>DEFENDANT—*Pro Se* |
| Prentice L. White<br>*Louisiana Appellate Project*<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLANT<br>DEFENDANT—Joshua Stephens |
| Rickey L. Babin<br>*District Attorney*<br>Donald D. Candell<br>Lindsey D. Manda<br>*Assistant District Attorneys*<br>Gonzales, Louisiana | COUNSEL FOR APPELLEE<br>State of Louisiana |

* * * * * * *

BEFORE: THERIOT, HESTER, AND EDWARDS, JJ.

**EDWARDS, J.**

The Grand Jurors of the Twenty-Third Judicial District, for the Parish of Ascension, charged the defendant, Joshua Stephens, by bill of indictment with second degree murder—a violation of La. R.S. 14:30.1 (count one); aggravated criminal damage to property—a violation of La. R.S. 14:55 (count two); and being a convicted felon in possession of a firearm—a violation of La. R.S. 14:95.1 (count three).[1] The defendant entered a plea of not guilty. Following a jury trial, the jury found the defendant guilty as charged on each count. On count one, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence and ordered the defendant to pay a fee of forty-five dollars ($45.00) to the indigent defender fund. On count two, the trial court sentenced the defendant to ten years at hard labor. On count three, the trial court sentenced the defendant to ten years at hard labor without benefit of parole, probation, or suspension of sentence and ordered the defendant to pay a fine of one thousand dollars ($1,000.00). The trial court ordered the sentences on all three counts to run concurrently. The defendant now appeals, designating one counseled assignment of error and one *pro se* assignment of error. For the following reasons, we affirm the defendant's convictions; affirm the sentences on counts one and two; affirm in part, and vacate in part the sentence on count three as to the imposed fine; vacate the imposed fee; and remand for a hearing in compliance with La. Code Crim. P. art. 875.1 and for resentencing as to count three.

**FACTS**

On the evening of March 24, 2016, Dwayne Stephens—the victim—was outside of his home, located at 39150 J. Lee Stephens Road in Ascension Parish, when a vehicle pulled up. Three men exited the vehicle and began firing weapons in

---

[1] The grand jurors also indicted co-defendants, Caleb Carter and Marcus Harris, in the same grand jury bill of indictment. The trial court granted the State's oral motion to sever the co-defendants and proceed to trial as to Joshua Stephens only. See La. Code Crim. P. art. 704.

the direction of the house. Several people, including two children, were inside the home when the shooting occurred. Dwayne was shot six times and died shortly thereafter. An eye-witness identified one of the shooters as the defendant—who is also Dwayne's cousin. Detectives with the Ascension Parish Sheriff's Office ("APSO") located the defendant in Texas, where he was arrested and subsequently extradited to Louisiana and charged with the instant offenses.

## SUFFICIENCY OF THE EVIDENCE

In his counseled assignment of error, the defendant argues the evidence was insufficient to convict him as the State failed to prove his identity as the shooter.

## Law

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV, § 1; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); **State v. Currie**, 2020-0467 (La. App. 1 Cir. 2/22/21), 321 So.3d 978, 982. See also La. Code Crim. P. art. 821(B);

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. La. R.S. 15:438; **Currie**, 321 So.3d at 982. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence

3

presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Dyson**, 2016-1571 (La. App. 1 Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proved by direct evidence or by inference from circumstantial evidence, and is an ultimate conclusion to be resolved by the fact finder. **State v. Howard**, 2023-1060 (La. App. 1 Cir. 6/3/24), 392 So.3d 365, 370-71.

Aggravated criminal damage to property is the intentional damaging of any structure wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55(A). Aggravated criminal damage to property requires proof of general criminal intent. General criminal intent is present when the circumstances indicate the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act. Thus, aggravated criminal damage to property is committed upon proof that the accused voluntarily did the act. See **State v. Dawson**, 2018-0257 (La. App. 1 Cir. 9/21/18), 2018 WL 4520104, *2 (unpublished).

Possession of a firearm by a convicted felon requires proof of the defendant's status as a convicted felon, and that the defendant was in possession of a firearm. The State must also prove ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. See La. R.S. 14:95.1; **State v. St. Cyre**, 2019-0034 (La. App. 1 Cir. 12/19/19), 292 So.3d 88, 113, writ denied, 2020-00142 (La. 5/26/20), 296 So.3d 1063.

4

The State bears the burden of proving the elements of each offense, along with the burden of proving the identity of the defendant as the perpetrator. When, as in this case, the key issue is the perpetrator's identity, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **State v. Coleman**, 2017-1045 (La. App. 1 Cir. 4/13/18), 249 So.3d 872, 877-78, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155.

### Evidence and Testimony Presented at Trial

Bernard Jones, Jr. testified as an eye-witness to the instant crimes. Mr. Jones lived across the street from the victim, Dwayne, and had also known the defendant for several years. Mr. Jones testified that the defendant was Dwayne's cousin. On the evening of March 24, 2016, Mr. Jones stated he went to the gas station to get something to drink and then drove to Dwayne's house where he, Dwayne, and another gentleman, Fred, were outside talking. As Dwayne and Fred entered the house, Mr. Jones went to sit in his vehicle. While sitting in his vehicle, Mr. Jones saw the defendant's vehicle—which he described as a yellowish, two-door Lincoln Continental—pull up to Dwayne's house. The defendant was driving the vehicle, and Marcus Harris and Caleb Carter (the co-defendants) were passengers. Mr. Jones testified the defendant jumped out of the car holding an assault rifle and began firing shots at the house as Dwayne and Fred were walking through the door. According to Mr. Jones, the defendant unloaded the first magazine and then retrieved a second magazine from Caleb Carter and started shooting at the house again. The defendant attempted to get a third magazine, but was unable to do so. Mr. Jones testified Marcus Harris was located at the passenger side near the front seat of the defendant's vehicle. According to Mr. Jones, Marcus Harris had a small handgun and was shooting at the house as well. When the defendant noticed Mr. Jones exit his vehicle, he told Marcus Harris: "He make another move, you do him too." The defendant and co-defendants then got back into

the defendant's vehicle and quickly drove away. Mr. Jones called 911. Mr. Jones testified there were several people inside the house when the defendant was shooting at it, including the victim's fiancée, his two children, and Fred. Mr. Jones admitted he had a few drinks and "probably" used crack cocaine prior to the shooting. However, Mr. Jones affirmed that he was one-hundred percent certain the defendant was the person he saw shoot the victim.

Tamekia Ricks—the victim's fiancée—testified that on the night of the shooting, she was inside their home with the victim's two children, a twelve-year-old and a four-year-old. Ms. Ricks testified Dwayne was walking through the front door when the shooting started. Dwayne was struck by gunfire and then collapsed in the kitchen. Ms. Ricks called 911. According to Ms. Ricks, Dwayne and the defendant were relatives, and she and Dwayne treated the defendant like a son. Ms. Ricks testified she noticed the defendant's vehicle, which she described as a cream-colored Lincoln Town Car, through the kitchen window. She also testified she heard the defendant's voice yelling Dwayne's name, during the shooting.

Dr. Karen Ross, a forensic pathologist with the East Baton Rouge Parish Coroner's Office, performed the autopsy in this case. Dr. Ross testified that the victim suffered multiple gunshot wounds, including one to the left side of the chest, one to the lower abdomen, one to the lower chest, two to the left arm, and one to the left hand. Dr. Ross testified the gunshot wound to the left side of his chest, which hit the victim's heart, "would have been the most rapidly fatal and singularly fatal."

Kailye Smith worked for the Investigative Support Division of the APSO and helped process the crime scene in this case. She testified that the victim's house was shot approximately forty times, with bullet holes starting from the left side of the house and continuing past the front door. According to Ms. Smith, two different caliber guns were used. However, the .22 caliber rifle fired considerably more shots than the .380 caliber weapon.

6

Approximately fourteen hours after the shooting in the instant matter, Joshua Poret—who worked at the Louisiana State Fire Marshal's Office—responded to a possible arson in St. Landry Parish. Mr. Poret testified that when he arrived on the scene, he saw a burnt vehicle. The vehicle's license plate was still intact. After running the license plate, it was discovered the vehicle was registered to the defendant.

Lieutenant Randy Heflin with the APSO testified he interviewed Mr. Jones as a witness to the shooting. During the interview, Mr. Jones identified the defendant in a photographic lineup as one of the shooters. Mr. Jones also identified the co-defendants, Marcus Harris and Caleb Carter, in photograph lineups. Several days later, Lt. Heflin learned the defendant and Marcus Harris were located in Galveston, Texas. Lt. Heflin testified the defendant and Marcus Harris were taken into custody and extradited to Louisiana.

Lieutenant Glenn Luna with the APSO testified he interviewed the defendant after he was extradited to Louisiana. Lt. Luna testified the defendant admitted to setting his vehicle on fire. However, the defendant denied any involvement in the victim's death. The defendant explained he was at a gas station when the shooting occurred, and received phone calls informing him that people were saying his vehicle was involved in the shooting.

The State also introduced text messages exchanged between victim's phone and the defendant's phone shortly before the shooting. The text messages indicated the two men were having a dispute, with an escalating exchange ending with Dwayne telling the defendant, "I want u to use it . . . u and [your] brothers[.]" The shooting occurred shortly thereafter.

Finally, the State and the defendant stipulated that the defendant was a convicted felon, having been previously convicted of aggravated assault with a firearm, illegal use of a firearm, and possession of cocaine. It was further stipulated those convictions

7

fell within the ten-year window and could be used as a predicate offense for the crime of possession of a firearm by a convicted felon. The defendant did not testify at trial.

## Discussion and Analysis

On appeal, the defendant argues the State failed to provide sufficient and credible evidence the defendant was responsible for the victim's death. The defendant contends Mr. Jones was intoxicated at the time he witnessed the offense, and no other direct or physical evidence connected the defendant to the shooting. We disagree.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Alexander**, 2014-1619 (La. App. 1 Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Lavy**, 2013-1025 (La. App. 1 Cir. 3/11/14), 142 So.3d 1000, 1006, writ denied, 2014-0644 (La. 10/31/14), 152 So.3d 150.

A thorough review of the record reveals the State provided ample evidence of each offense, and the defendant's identity as the perpetrator of those offenses. Mr. Jones testified he had known the defendant for years and was familiar with the kind of car the defendant drove. On the night of the shooting, Mr. Jones saw the defendant's vehicle pull up to the victim's house. Mr. Jones then saw the defendant get out of the vehicle with an assault-style rifle and fire several rounds of ammunition into the victim's home as the victim was walking through the front door. Specific intent may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Henderson**, 99-1945 (La. App. 1 Cir. 6/23/00), 762 So.2d 747, 751, writ denied, 2000-

2223 (La. 6/15/01), 793 So.2d 1235. Accordingly, Mr. Jones' testimony, by itself, establishes each element of the crime of second degree murder.

Moreover, Mr. Jones testified the victim's fiancée, his two children, and his friend Fred were all inside the home when the defendant shot at the house no fewer than forty times. Accordingly, the jury could have reasonably found this testimony sufficient to find the defendant guilty of aggravated criminal damage to property. Finally, because the defendant stipulated to his status as a convicted felon, Mr. Jones' testimony that the defendant was in possession of the assault-style rifle was sufficient to find him guilty of being a convicted felon in possession of a firearm.

The defendant contends Mr. Jones was too intoxicated at the time of the shooting to be viewed as a credible or reliable witness. However, the jury heard evidence of Mr. Jones' intoxication and gave it the weight they believed it deserved. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **Lavy**, 142 So.3d at 1006.

Additionally, the State introduced a significant amount of circumstantial evidence against the defendant. Ms. Ricks testified she recognized the defendant's vehicle and heard the defendant's voice during the shooting. The jury also saw evidence of an escalating text message exchange between the victim and the defendant just prior to the shooting. Moreover, the jury heard evidence the defendant fled to Texas after the shooting and admitted to setting his vehicle on fire once he learned the vehicle was implicated in the victim's death. Flight and attempt to avoid apprehension indicate consciousness of guilt, and therefore are circumstances from which a juror may infer guilt. See **State v. Fuller**, 418 So.2d 591, 593 (La. 1982).

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417,

418 (*per curiam*). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt all of the elements of second degree murder, aggravated criminal damage to property, and possession of a firearm by a convicted felon, and the defendant's identity as the perpetrator of those offenses. This counseled assignment of error is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his *pro se* assignment of error, the defendant argues his trial counsel was ineffective for failing to object to the prosecutor's closing remarks, which amounted to prosecutorial misconduct and for failing to question a witness regarding his interest or bias in the case.

## Law

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient; and (2) the deficiency prejudiced him. **Strickland v. Washington**, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." **Strickland**, 466 U.S. at 687, 104 S.Ct. at 2064.

The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an

10

inadequate showing on one of the components. **State v. Turner**, 2023-0831 (La. App. 1 Cir. 4/19/24), 2024 WL 1694002, \*6 (unpublished).

A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted. However, in the interest of judicial economy, an appellate court may address the issue of ineffective assistance where the record discloses evidence needed to decide the issue and the defendant raises the issue by assignment of error on appeal. **State v. Kimble**, 2023-0176 (La. App. 1 Cir. 9/21/23), 376 So.3d 869, 875.

## Discussion and Analysis

The defendant asserts that his counsel failed to object or request a mistrial after the prosecutor referenced his prior convictions during his closing remarks. The defendant specifically challenges the following remarks:

> I ask you at the end of the day, at the end of these deliberations, that you find him guilty of [second] degree murder, I ask that you find him guilty for placing the lives of Fred, Tamekia[,] and those two children in harm of aggravated criminal damage to property, and I ask you, due to his own admissions, he's been convicted of aggravated assault with a firearm, illegal possession and use of a firearm, possession of cocaine, I ask you find him guilty of felon with a firearm.

Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See La. Code Crim. P. art. 774; **State v. Bedwell**, 2018-0135 (La. App. 1 Cir. 6/21/18), 2018 WL 3080356, \*2 (unpublished), writ denied, 2018-1247 (La. 1/18/19), 262 So.3d 288. Prosecutors are allowed wide latitude in choosing closing argument tactics. **Id**.

The remarks in question were within the permissible scope of closing arguments. The record reflects that the State and the defense stipulated that the defendant had previously been convicted of aggravated assault with a firearm, illegal

11

use of a firearm, and possession of cocaine. Thus, the prosecutor's reference to the defendant's criminal history was clearly drawn from the evidence stipulated to at trial, and any objection by defense counsel thereto would have been futile. Therefore, the defendant's argument does not satisfy either prong of **Strickland**, 466 U.S. at 687, 104 S.Ct. at 2064.

The defendant next argues that his counsel was ineffective for failing to question a witness regarding his interest or bias in the case. The defendant references the testimony provided by Mr. Jones and insists that defense counsel did not ask the witness if he made a deal with the State, if he had a criminal conviction or pending criminal charges, nor did counsel attack Mr. Jones' credibility.

It is unclear from the record whether Mr. Jones entered any deals with the State or whether he has a criminal record; therefore, this court cannot adequately review the defendant's claim. Because the record does not allow for definitive resolution on appeal, we find the defendant's claim is more properly relegated to post-conviction proceedings, where the trial court may conduct a full evidentiary hearing. See **State v. Anderson**, 2022-0587 (La. App. 1 Cir. 12/22/22), 357 So.3d 845, 854, writ denied, 2023-00352 (La. 9/6/23), 369 So.3d 1267.

## PATENT ERROR

This court routinely conducts an independent review of the entire record, including a review for patent error under La. Code Crim. P. art. 920(2). Our review revealed the existence of a patent sentencing error in this case.

At the time the trial court sentenced the defendant on October 11, 2023 and November 14, 2023, La. Code Crim. P. art. 875.1 required the trial court to conduct a hearing to determine whether the payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial hardship to the defendant. Article 875.1(C) states, in pertinent part:

12

(1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations . . . the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents[.]

(2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

In this case, the trial court imposed a fine of one thousand dollars ($1,000.00) as to count three and ordered the defendant to pay a forty-five dollars ($45.00) fee to the indigent defender fund. However, the trial court did not hold the mandatory hearing required under La. Code Crim. P. art. 875.1(C). The record contains no waiver of the judicial determination of financial hardship. Accordingly, we affirm the defendant's sentence on count three insofar as it sentences him to a concurrent ten years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Pursuant to La. Code Crim. P. art. 875.1, we are obligated to vacate the defendant's sentence on count three insofar as the sentence included the imposition of a fine of one thousand dollars ($1,000.00) without a hearing to determine if the fine would impose a substantial hardship. We also vacate the order requiring the defendant to pay forty-five dollars ($45.00) to the indigent defender fund. We remand this case to the trial court for a hearing in compliance with La. Code Crim. P. art. 875.1. See **State v. McKnight**, 2023-0886 (La. App. 1 Cir. 7/24/24), 395 So.3d 897, 904-06, writ denied, 2024-01069 (La. 12/11/24), 396 So.3d 969.

## DECREE

Based on the foregoing, we affirm the defendant's convictions; affirm the sentences on counts one and two; affirm in part, and vacate in part the sentence on count three as to the imposition of the one thousand dollars ($1,000.00) fine; and vacate the imposition of the forty-five dollars ($45.00) fee to be paid to the indigent defender fund. We remand for a hearing in compliance with La. Code Crim. P. art. 875.1 and for resentencing as to count three.

**CONVICTIONS AFFIRMED; SENTENCES ON COUNTS ONE AND TWO AFFIRMED; SENTENCE ON COUNT THREE AFFIRMED IN PART, AND VACATED IN PART; FINANCIAL OBLIGATION IMPOSED PURSUANT TO LOUISIANA REVISED STATUTES 15:168 VACATED; REMANDED FOR HEARING IN COMPLIANCE WITH LOUISIANA CODE OF CRIMINAL PROCEDURE ARTICLE 875.1 AND FOR RESENTENCING AS TO COUNT THREE.**